703 A.2d 276

ASBESTOS WORKERS LOCAL UNION NO. 32 AND ASBESTOS WORKERS LOCAL NO. 32 FRINGE BENEFIT FUNDS, PLAINTIFFS-RESPONDENTS, v. DENNIS SHAUGHNESSY AND RAYMOND SHAUGHNESSY, INDIVIDUALLY AND T/A S.D.E. CONSTRUCTION CO. AND/OR R.E.M. CO. AND S.D.E. CONSTRUCTION CO., INC. AND R.E.M., INC., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted October 21, 1997—Decided November 5, 1997.

Before Judges DREIER and KEEFE.

*Starr, Gern, Davison & Rubin,* attorneys for appellants (*Domenic D. Toto,* on the brief).

*Francis H. Pykon,* attorney for respondents.

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendants, Dennis Shaughnessy and Raymond Shaughnessy, individually and t/a S.D.E. Construction Co. and/or R.E.M. Co. and S.D.E. Construction Co., Inc. and R.E.M., Inc., appeal from a summary judgment holding them liable for corporate debts incurred during a period that the corporation's charter was suspended for failure to file its 1994 annual report and payment of the requisite fees. According to the parties' stipulation, neither the officers nor the plaintiffs, Asbestos Workers Local Union No. 32 and Asbestos Workers Local No. 32 Fringe Benefit Funds, were aware that the corporate charter was suspended when the collective bargaining agreement was signed requiring the payment of employee benefits. Thereafter, defendants filed the annual report and paid the fees, and, as also stipulated, the corporate charter

was reinstated by the Secretary of State. *N.J.S.A.* 14A:4–5(5). The trial judge determined that during this period of suspension defendants became individually liable for the debts arising under the contracts they signed on behalf of the corporation. We disagree, and reverse the judgments entered against defendants.

■ There are two bases for our reversal. First, we see no reason for such a rule where the contracting party neither relied upon the individual assurances of the officers nor upon their credit. The rule determined by the trial judge could cause havoc in the business community. Corporate charters are suspended for a variety of reasons such as failure to file the annual report as in this case, *N.J.S.A.* 14A:4–5(5), failure to pay corporate franchise taxes, *N.J.S.A.* 54:11–1, and, in regulated industries, the failure to follow a variety of statutes or administrative regulations. Under the trial judge's ruling, every corporate officer would be required to consult the corporation's attorneys and accountants, or perhaps the Secretary of State before any agreement were signed, at the risk of becoming personally liable for the corporate obligation.

Although the parties' briefs and the trial judge's opinion concentrated on revocations for non-payment of taxes, the stipulation in this case indicates clearly that the revocation was for failure to file an annual report and to pay the requisite fees pertaining thereto. We can understand how the parties and judge may have been misled, since the form for reinstatement also requires that the corporation obtain a certification from the Director of the Division of Taxation that there is no cause for revocation of the charter because of non-payment of taxes, and the only statutory reference in the reinstatement form is to the taxation sections, rather than to the New Jersey Business Corporation Act.

The trial judge, in a detailed opinion, determined that notwithstanding the reinstatement of the corporate charter and the possible retroactive effect thereof, the corporation became a corporation in dissolution with increased responsibilities imposed upon the corporate directors. Had this been a corporation in dissolution, the statutory provisions governing the actions of the

directors would have taken effect. *N.J.S.A.* 14A:12–9(1) provides that a dissolved corporation is to "carry on no business except for the purpose of winding up its affairs." This was not the situation in the case before us. As noted in the parties' stipulation, the Secretary of State had mailed the annual report form to a former shareholder and officer who neglected to forward the same to the corporate offices.[1] There was obviously no intention on the part of the corporation to dissolve or wind up its affairs.

The trial judge likened this case to director or officer negligence in failing to prevent an apparent fraud, citing *Francis v. United Jersey Bank,* 87 *N.J.* 15, 432 *A.*2d 814 (1981). The judge further stated that the officers were required to see that taxes were paid. As noted, however, this case did not involve taxes, but rather the filing of annual reports. The other cases cited by the court deal mainly with dissolved corporations and the responsibilities of directors during a corporate dissolution. Here, where the corporation apparently retained its validity, except for the fact that a report sent to a former stockholder and officer had gone astray, imposing individual liability on directors or officers would be intolerable. The Union made an agreement with what it thought was a viable corporation. Defendants acted on behalf of what they also thought was a viable corporation. Once the charter was restored, the parties' expectations again became a reality. To impose personal liability upon the corporation's principals on these facts simply makes no sense.

██ A second reason for reversal is that the Corporation Act itself, in *N.J.S.A.* 14A:4–5(7) notes that the reinstatement of the charter is retroactive. The Act reads, in salient part:

---

[1] We may even question why the corporate charter was revoked for the failure to file the 1994 annual report. *N.J.S.A.* 14A:4–5(5) requires the failure to file an annual report for two consecutive years, and a required written notice by certified mail to the corporation and its registered agent before the charter could be revoked. In view of our decision in this case, we need not inquire further into whether the Secretary of State followed the correct procedures.

If the certificate of incorporation of a domestic corporation or a certificate of authority of a foreign corporation has been revoked by proclamation, the certificate shall be reinstated by proclamation of the Secretary of State upon: (a) payment by the corporation of all fees and fines due to the Secretary of State and (b) certification of the Director of the Division of Taxation that no cause exists for revocation of the corporation's certificate of incorporation or certificate of authority pursuant to R.S. 54:11–2. *The reinstatement relates back to the date of issuance of the proclamation revoking the certificate of incorporation or the certificate of authority and shall validate all actions taken in the interim* . . . .

[Emphasis added].

The Act could not be clearer. The reinstatement validated the agreement between the Union and the Corporation. The statute governing the revocation of the charter for non-filing of annual reports contains its own reinstatement provisions including those for relation back and validation of actions taken during the revocation period. There is thus no reason to add personal liability to that of the corporation.

If, however, there were an element of fraud, or if there were express reliance upon the individual credit of the officers because the contract was entered into with knowledge that the corporation was to be dissolved, there might be a different result, but this is not the case before us. Both public policy and the dictates of the governing statute call for only one result, a reversal of the judgment granted by the Law Division.

The summary judgment is reversed, and the matter is remanded to the Law Division for any further proceedings.